IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JENNIFER SNOW, on behalf of herself, and all others similarly situated, and the general public,<br><br>              Plaintiff,<br><br>       vs.<br><br>L'OREAL USA, INC., *et al.*,<br><br>              Defendants. | Civil No. 24-00110 MWJS-KJM<br><br>ORDER GRANTING DEFENDANT L'OREAL USA, INC.'S MOTION TO TRANSFER VENUE |

**<u>INTRODUCTION</u>**

Plaintiff Jennifer Snow bought an over-the-counter acne treatment product from Defendant L'Oréal USA, Inc., which she later learned contained allegedly unsafe amounts of a carcinogen.  She now brings a putative class action on behalf of herself and other Hawai'i residents who bought the same product, claiming that L'Oréal violated Hawai'i state law by failing to warn its consumers about the alleged contamination.  On behalf of herself and the proposed class, Snow seeks monetary damages for the harms she sustained using these products, as well as injunctive and declaratory relief.

L'Oréal has filed a motion to transfer venue of this action to the Southern District of New York, where there are now five other pending cases involving L'Oréal products

that contain the same alleged carcinogen.  Snow opposes transfer.  For the reasons

detailed below, L'Oréal's Motion is GRANTED.

**BACKGROUND**

**A.      The Initial Complaint**

L'Oréal is a cosmetics brand that manufactures, markets, and sells over-the-

counter products to treat acne.  Some of these products contain a drug product known

as benzoyl peroxide (BPO).  When BPO is exposed to high temperatures, it can break

down into a compound called benzene, a known human carcinogen.  ECF No. 1, at

PageID.15-16.  And in March 2024, a third-party laboratory called Valisure tested some

of L'Oréal's products and determined that they contained unsafe levels of benzene

when exposed to high temperatures.  *Id.* at PageID.6-7.  That same month, Snow filed

her initial complaint (the "Initial Complaint").  *See* ECF No. 1.

The Initial Complaint alleged that between May and October 2023, Snow bought

and used a L'Oréal acne cream that contained BPO.  *Id.* at PageID.37.  It alleged that the

cream did not label benzene as an ingredient or warn consumers that it contained

benzene, and that if Snow had known that it did, she would not have bought the

product.  *Id.* at PageID.7-9, 37-38.  Further, the Initial Complaint alleged that L'Oréal

knew or should have known that its BPO products could contain benzene, and that

L'Oréal therefore engaged in false and misleading marketing, advertising, and labeling.

*Id.* at PageID.50-54.  The Initial Complaint brought claims of deceptive trade practices

2

and false advertising violations under various state statutes, in addition to claims of breach of warranty and unjust enrichment. *Id.* at PageID.50-65. Snow's Initial Complaint sought to represent a nationwide class of consumers who bought these products, including citizens of California, Connecticut, Hawaiʻi, Illinois, Maryland, Massachusetts, Missouri, Nevada, New York, Ohio, Pennsylvania, Rhode Island, and Washington. *Id.* at PageID.9-10. It requested compensatory and punitive damages for Snow and members of the proposed nationwide class, in addition to injunctive and declaratory relief. *Id.* at PageID.65-66.

### B. The MDL Panel's First Order

L'Oréal was not the only company accused of producing, marketing, and distributing acne products containing unsafe levels of benzene. Because many other companies were named as defendants in similar class action lawsuits, in May 2024, a multi-district litigation petition was filed with the U.S. Judicial Panel on Multidistrict Litigation (the "MDL Panel") seeking industry-wide centralization of twenty-eight actions, including this one. *In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 743 F. Supp. 3d 1373 (U.S. Jud. Pan. Mult. Lit. 2024). The plaintiffs in these actions either supported or did not oppose centralization, "though they differ[ed] as to their preferred transferee district." *Id.* at 1373. Snow, for her part, proposed centralization in a federal district in California.

The MDL Panel decided that centralization of all cases was not necessary. It noted that "[a]ll but one of the suits were brought against an individual defendant or group of related defendants and involve a single product line" and reasoned that centralization of claims against different defendants is not preferred because it does not typically promote judicial efficiency or convenience to the witnesses or parties. *Id.* at 1374. And because the plaintiffs "d[id] not allege an industry-wide conspiracy or an indivisible physical injury caused by multiple defendants' products or conduct," the panel was concerned that centralization would still result in an "unwieldy" case management situation. *Id.* at 1374-75 (footnote omitted).

The panel noted, however, that "defendants have made concerted efforts to organize the litigation on a defendant-specific basis by seeking to transfer claims against them to either their home jurisdictions or the jurisdictions in which the first-filed action is pending" and that the panel was therefore "inclined to allow these efforts to self-organize the litigation to play out." *Id.* at 1375.

C.     **L'Oréal's Motion to Transfer Venue**

On the heels of the MDL Panel's decision, L'Oréal moved to transfer the venue of this action to the Southern District of New York. ECF No. 27. In its motion, L'Oréal pointed out that, as of that date, there were already two pending cases against L'Oréal in the Manhattan federal district court that had been initially filed in that court: *Abednego v. LOreal USA, Inc.*, No. 24-cv-03998 (S.D.N.Y. May 24, 2024), and *Noakes v.*

4

*L'Oreal U.S.A., Inc.*, No. 24-cv-02735 (S.D.N.Y. Apr. 11, 2024). By the time of the first

hearing on this motion, a third case, *O'Dea v. L'oreal U.S.A.*, No. 24-cv-08352 (S.D.N.Y.

Apr. 5, 2024), had been transferred to the Southern District of New York court from the

Northern District of Illinois. L'Oréal further noted that there were three other cases,

including this one, in which motions to transfer were pending. *See Painter v. L'Oreal

USA, Inc.*, No. 24-cv-03077 (W.D. Mo. Mar. 19, 2024); *Grossenbacher v. L'Oreal USA Inc*,

No. 24-cv-00663 (E.D. La. Mar. 15, 2024).

Snow opposed the motion, arguing that her case should remain in this district.

ECF No. 29. This court scheduled a hearing for November 14, 2024. ECF No. 33. Prior

to that hearing, the district court in the Western District of Missouri filed an order

transferring the *Painter* case to the District of Hawaiʻi, reasoning that this was the

district where a related putative class action against L'Oréal was first filed. *See Painter

v. L'Oréal*, No. 24-cv-03077, 2024 WL 4774904, at *3 (W.D. Mo. Nov. 13, 2024). The

Western District of Missouri recognized, however, that its transfer decision did not

resolve whether litigating the *Painter* case in this district was warranted. *Id.* It observed

that this court would still need to consider whether to further transfer the matter to

another district—including possibly on the ground that this court lacks venue over the

*Painter* case or personal jurisdiction over L'Oréal for the claims raised in *Painter*. *See id.*

(explaining that if the District of Hawaiʻi court "believes it does not have personal

jurisdiction or venue is improper, it may transfer the case").

During the November 14, 2024, hearing, the court asked Snow's counsel whether it would be realistic to consolidate matters in the District of Hawaiʻi, given the possibility that personal jurisdiction and venue could be lacking in the *Painter* case (and possibly others).  ECF No. 35, at PageID.607-08 (Tr. at 24-25, Nov. 14, 2024).  Snow's counsel pointed to two possibilities:  Snow and other named plaintiffs could conceivably file an amended complaint in this district, *id.*, and there could also be a new motion with the MDL Panel for defendant-specific centralization here, *id.* at PageID.597-98 (Tr. at 14-15, Nov. 14, 2024).

Meanwhile, Snow's counsel asked the court to defer ruling on L'Oréal's motion to transfer venue until the *Painter* case formally arrived in this district, given its possible bearing on the merits of L'Oréal's motion.  *Id.* at PageID.614 (Tr. at 31, Nov. 14, 2024).  The court granted that request.  ECF No. 33.

### D.    The MDL Panel's Second Order

The named plaintiffs in the six related actions against L'Oréal filed a second motion with the MDL Panel, as Snow's counsel had anticipated.  The plaintiffs proposed defendant-specific centralization in the District of Hawaiʻi.  L'Oréal opposed centralization and alternatively proposed centralization in the Southern District of New York.

On February 7, 2025, the MDL Panel denied the plaintiffs' motion.  *In re L'Oreal USA, Inc., Benzoyl Peroxide Mktg. & Sales Pracs. Litig.*, MDL No. 3141, 2025 WL 428102

(U.S. Jud. Pan. Mult. Lit. Feb. 7, 2025).  The MDL Panel concluded that "centralization is

not necessary for the convenience of the parties and witnesses or to further the just and

efficient conduct of the litigation."  *Id.* at *1.  To be sure, it recognized that the actions

"contain common questions of fact—primarily whether, and under what conditions,

benzoyl peroxide degrades into benzene, and whether any resultant benzene exceeds

safe levels."  *Id.*  But the MDL Panel noted that "centralization . . . should be the last

solution after considered review of all other options."  *Id.* (cleaned up).  And here, the

MDL Panel saw another option short of centralization:  "efforts to self-organize the

litigation" into "defendant-specific hubs," which "ultimately may prove the most

efficient means of moving the litigation toward resolution."  *Id.* (cleaned up).  At the

time of the MDL Panel's decision, "three of the six cases [we]re pending before a single

judge in the Southern District of New York," while in the other three cases, "the

pending Section 1404 transfer motions and challenges to venue and personal

jurisdiction have the potential to bring all cases to a single district."  *Id.*  The MDL Panel

therefore concluded that centralization—which should be considered the "last

solution"—was not yet warranted.

### E.    The First Amended Complaint

A week after the MDL Panel issued its decision, on February 14, 2025, the court

held a status conference.  ECF No. 38.  Counsel for Snow requested that the court

continue to reserve its ruling on the pending motion to transfer venue because Snow

anticipated filing an amended complaint within thirty days.  *Id.*  L'Oréal did not oppose the request, and so the court set a further status conference for March 13, 2025.  *Id.*

Before Snow filed her amended pleading, the parties in the *Painter* case—which had formally arrived in the District of Hawaiʻi as a result of the Western District of Missouri's transfer order—jointly stipulated to the transfer of the action to the Southern District of New York.  On February 20, 2025, the court approved and ordered that stipulation.  *Painter v. L'Oreal USA, Inc.*, No. 24-cv-00512, ECF No. 49 (D. Haw. Mar. 19, 2024).

Snow then filed her First Amended Complaint (FAC) on March 12, 2025.  ECF No. 41.  This amended pleading is similar to the Initial Complaint in most respects.  But it differs in one significant aspect:  the FAC limits its claims to those resting on Hawaiʻi state law, and further limits the proposed class to Hawaiʻi residents.  *Id.*

At the March 13, 2025, status conference, the court invited supplemental briefing from the parties to address whether recent developments—including the MDL Panel's denial of defendant-specific centralization, the transfer of the *Painter* case to the Southern District of New York, and Snow's FAC—bore on the merits of L'Oréal's motion to transfer venue.  ECF No. 44.  The parties filed those briefs, ECF Nos. 46 & 49, and the court held a further hearing on April 16, 2025, ECF No. 51.

//

//

## DISCUSSION

### A.    Legal Standard

Under 28 U.S.C. § 1404(a), a district court has discretion to transfer a case to another district or division where the action could have been originally brought "[f]or the convenience of parties and witnesses" or "in the interest of justice."  The purpose of the statute is "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Rickman v. U.S. Gov't Veteran Affs. San Diego Healthcare Sys.*, No. CV-19-00420, 2020 WL 9048800, at *2 (D. Ariz. Mar. 26, 2020).

A district court has discretion in deciding whether to transfer a case to another venue and, to properly exercise that discretion, it must undertake an "individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (cleaned up); *see also Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." (citation omitted)).  This individualized assessment requires a district court to balance the interest of justice with factors related to convenience, which may include the following:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process

9

to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99.

In weighing these factors, courts have recognized that the "interests of justice, including judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Glaxo Grp. Ltd. v. Genentech, Inc.*, No. C 10-00675, 2010 WL 1445666, at *2 (N.D. Cal. Apr. 12, 2010) (cleaned up).

### B. The Interests of Justice and Factors Related to Convenience, Taken Together, Weigh in Favor of L'Oréal's Motion

There is no dispute that this action could have been brought in the Southern District of New York. *See* 28 U.S.C. § 1404(a) (permitting transfer to another district only "where it might have been brought"). L'Oréal's motion therefore turns on whether the interests of justice and factors related to convenience weigh in favor of transferring the action. The court finds that the interests of justice weigh heavily in favor of transfer, while the convenience factors are something of a wash. And it concludes, under these circumstances, that transfer is warranted.

#### 1. The Interests of Justice

In assessing whether the interests of justice weigh in favor of a motion to transfer venue, one critical question is "whether efficient and expeditious administration of justice would be furthered" through a transfer. *Glaxo Grp.*, 2010 WL 1445666, at *2

10

(citation omitted).  In that vein, courts have recognized that "[t]he feasibility of consolidation is a significant factor in a transfer decision" because "of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."  *A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974); *see also Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) ("An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." (citation omitted)).  On the flipside, courts have "long recognized that to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Wood v. Best Buy Co.*, No. 11-1877, 2011 WL 3740812, at *1 (N.D. Cal. Aug. 25, 2011) (cleaned up).

These considerations weigh heavily in favor of L'Oréal's motion.  As the MDL Panel observed, there are six related putative class actions against L'Oréal in play, and five of them were filed in or have been transferred to the Southern District of New York.[1]  Snow correctly notes that there are Hawai'i-specific factual and legal issues that

---

[1]    At the April 16, 2025, hearing, counsel for L'Oréal advised that a seventh, related lawsuit has recently been filed in the District of New Jersey, and that plaintiff's counsel in that case has agreed to voluntarily transfer the case to the Southern District of New York.  *Silva v. L'Oreal USA, Inc.*, 25-cv-02007 (D. N.J., Mar. 21, 2025).  Those developments would further support granting L'Oréal's motion to transfer, but the court does not rely on them in its analysis because Snow has not had an opportunity to respond to them in her briefing.

will need to be resolved, and that the five cases pending in Manhattan would not

present those same issues—for example, in considering the Hawai'i-specific claims, a

court may need to consider the relatively high temperatures that products may be

exposed to in transportation to and storage in Hawai'i.  But it remains true that all six of

these actions "contain common questions of fact—primarily whether, and under what

conditions, benzoyl peroxide degrades into benzene, and whether any resultant

benzene exceeds safe levels."  *In re L'Oreal USA, Inc., Benzoyl Peroxide Mktg. & Sales

Pracs. Litig.*, MDL No. 3141, 2025 WL 428102, at *1.  In addition, all plaintiffs rely on

Valisure's study and allege that L'Oréal knew or should have known that its products

contain, or could degrade into, benzene, and that L'Oréal should have provided

adequate warnings about these dangers.

Transfer of this case would substantially promote judicial economy given its

significant overlap with the five cases pending in the Southern District of New York.  If

this court grants L'Oréal's motion to transfer venue, then all six putative class actions

will be consolidated in a single federal district—and quite likely before the same district

judge—with the attendant "convenience to witnesses and parties."  *A. J. Indus., Inc.*, 503

F.2d at 389.  By contrast, the procedural history of this case has made plain that there is

no prospect of consolidation in this district.  For these reasons, denying the motion

would necessarily produce simultaneous litigation of identical issues in two separate

federal districts, and thus produce "the wastefulness of time, energy and money that

§ 1404(a) was designed to prevent."  *Wood*, 2011 WL 3740812, at *1 (cleaned up); *see*

*Hawkins*, 924 F. Supp. 2d at 1217 ("[I]f the Court were to deny transfer, the overall cost

of litigation will be effectively doubled because both suits will proceed

independently.").

Snow rejoins that if her lawsuit is transferred to the Southern District of New

York, only L'Oréal would benefit from these cost savings.  ECF No. 49, at PageID.751

("[O]nly in the eyes of Defendant would transferring this case to the SDNY improve

judicial efficiency or 'halve the party and judicial resources that will be consumed by

this litigation,' as Defendant asserts.").  But the court cannot agree that consolidation of

the six related class actions against L'Oréal would benefit only L'Oréal.  As explained

above, courts have long recognized that judicial economy is best served by avoiding

parallel litigation of identical issues in different federal districts.  Transfer and

consolidation further the interests of justice by avoiding unnecessarily duplicative

litigation, reducing the likelihood of inconsistent rulings, and eliminating the need to

have two different courts devote judicial resources to resolving identical matters.  *See*

*Morgan Hill Concerned Parents Assoc. v. California Dep't of Educ.*, No. 11-CV-3471, 2018

WL 2716900, at *5 (E.D. Cal. June 6, 2018).

These reasons for consolidation therefore implicate the interests of the judicial

system, rather than only L'Oréal's own private interests.  And the interests of justice, in

the "efficient and expeditious administration of justice," would be substantially

furthered by granting L'Oréal's motion, just as they would be substantially undermined by declining to do so.[2]  *Glaxo Grp.*, 2010 WL 1445666, at *2 (cleaned up).

## 2.    Factors Related to Convenience

Given how substantially the interests of justice weigh in favor of transfer, the remaining question is whether the convenience factors might tip the scales in the opposite direction.  The court concludes they do not.

a.  Since the plaintiff's choice of forum is generally entitled to deference, a defendant moving to transfer venue away from that chosen forum "must make a strong showing of inconvenience."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  And when considering the convenience to parties, a court should find that this factor "favor[s] the non-moving party if [transfer] merely shifts inconveniences from the defendants to the plaintiffs."  *Decter v. MOG Sales, LLC*, No. 84-4035, 2006 WL 3703368, at *2 (E.D. Cal. Dec. 14, 2006).  But while a plaintiff's choice of forum is typically given "great weight," when an individual "represents a class, the named plaintiff's choice of forum is given less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  And in cases where "the action has little connection with the chosen forum, less deference is accorded, even if the plaintiff is a resident of the forum."  *GPNE*

---

[2]      If there were evidence that a proliferation of copycat actions in a defendant's preferred venue were the result of collusion or bad faith, the court would likely give the interest in consolidating cases little to no weight.  But there is no such evidence here.

*Corp. v. Amazon.com, Inc.*, Civ. No. 11-00426, 2012 WL 1656923, at *5 (D. Haw. May 9, 2012) (cleaned up).

Snow's choice of forum would not have been entitled to meaningful weight based on the nature of her lawsuit as conceived in the Initial Complaint. That is because Snow sought to represent a nationwide class of plaintiffs, and she brought claims under the laws of multiple states. Under those circumstances, the fact that Snow is a resident of Hawaiʻi and chose to litigate here would not have counted for much—given the relative lack of connection between Snow's lawsuit and her chosen forum.

The calculus changes, however, under the First Amended Complaint. Snow now seeks only to represent a class of Hawaiʻi residents and seeks only to litigate Hawaiʻi state law claims. Some discounting of the significance of her chosen forum is still warranted, given that she seeks to represent a class, *see Lou*, 834 F.2d at 739, but there is now no question that her lawsuit has a close connection to the forum in which she has chosen to litigate.

L'Oréal emphasizes that this factor still weighs against Snow because she brings a class action and because Snow, during the initial litigation over industrywide centralization, "herself previously sought to transfer this action to another jurisdiction." ECF No. 27-1, at PageID.215. Although the fact that Snow earlier sought to have her action centralized with those of other plaintiffs in a federal district in California is not dispositive, it does suggest that she has been amenable to litigating in another forum.

Snow disputes that interpretation; she contends that she merely attempted to "find a mutually convenient forum to streamline litigation" with L'Oréal, and transfer to the Southern District of New York is not the same as a "a consolidated, streamlined MDL" because the Southern District of New York is "a foreign jurisdiction with a handful of disparately related actions." ECF No. 29, at PageID.502.

But, as noted above, transfer to the Southern District of New York could result in an effectively consolidated group of cases that would likely result in streamlining much of the pretrial proceedings and resolution of common issues of law and fact across the actions. These facts weigh against the deference usually given to a plaintiff's choice of venue.[3] *See Esquer v. StockX, LLC*, Case No. 19-CV-05933, 2020 WL 3487821, at *5 (N.D. Cal. June 26, 2020). This factor therefore does not weigh heavily in Snow's favor under the circumstances of this case.

b. The court does, as noted above, accept that transferring this case to the Southern District of New York would make the litigation substantially less convenient for Snow and her counsel. Snow's choice of forum, therefore, is not only entitled to deference as a matter of law, but it plainly would be the more convenient forum for her as a matter of fact. These considerations weigh in favor of denying L'Oréal's motion.

---

[3]     Snow also points out that she agreed to centralization at a time when she was seeking to represent a nationwide class, which is no longer the case. But it remains true that Snow herself—the only plaintiff whose convenience the court can readily consider, given that Snow does not suggest that the convenience of putative class members should be considered, *see infra* note 4—was amenable to litigating in California.

But their force is blunted by the fact L'Oréal has committed to allowing Snow herself to sit for a deposition in Hawai'i or via videoconference. *See* ECF No. 27-1, at PageID.219 n.5. That accommodation, moreover, can more generally be employed throughout the deposition practice in this case, and the court is confident that the Southern District of New York will encourage the parties to take all practicable steps to ensure that depositions are handled in a way that minimizes the burden on all witnesses.

The weight of the inconvenience to Snow is further discounted by the fact that courts consider the convenience to witnesses—rather than the parties themselves—the most important factor in deciding whether to transfer venue. *See, e.g., Decter*, 2006 WL 3703368, at *2 ("The convenience of the witnesses is said to be the most important factor in considering a transfer motion."). And it is not obvious that the Southern District of New York would be dramatically less convenient to witnesses, as a whole, than would the District of Hawai'i.

To be sure, primary consideration is given to third-party witnesses, not employee witnesses. *See Hawkins*, 924 F. Supp. 2d at 1215. And Snow emphasizes that L'Oréal has not specifically named any individual third-party witnesses who would be outside of this court's jurisdiction or who would benefit from the Southern District of New York venue. *See* ECF No. 29, at PageID.503-04.[4] But as L'Oréal correctly notes, its failure to

---

[4]    L'Oréal cites a number of authorities for the proposition that, in considering the convenience of the parties and witnesses, the court should not speculate about the

do so is not surprising, given the early stage in these proceedings.  And its failure to

identify particular individuals is less material here, given its broader representation—

which Snow does not meaningfully dispute—that nearly all of its relevant corporate

witnesses involved in "decision making relating to the formulation, testing, labeling,

and marketing of the BPO products" are located at the company's headquarters in New

York or the New York metropolitan area.  ECF No. 27-1, at PageID.218.

Furthermore, while Snow rightly argues that the court "may discount arguments

regarding the inconvenience to witnesses when those witnesses are employees of a

party which has the power to compel them to testify," the court's ability to manage

third-party witnesses still would be impaired by its lack of jurisdiction over those

individuals.  *Zut v. Harrah's Ent., Inc.*, No. C13-2372, 2013 WL 5442282, at *3 (N.D. Cal.

Sept. 30, 2013); *see Mina v. Red Robin Int'l, Inc.*, No. CV189472, 2020 WL 4037163, at *2

(C.D. Cal. Mar. 3, 2020) ("[A]ny former employee with knowledge of how the program

operates who was not inclined to testify would be subject to the court's subpoena power

in [the transferee district], whereas they would not be in the [transferor district]."); Fed.

R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or

deposition only . . . within 100 miles of where the person resides, is employed, or

---

convenience of putative class members.  Snow does not dispute these authorities or cite
any competing authorities, and so the court will not consider the convenience of
putative class members.

regularly transacts business in person; or . . . within the state where the person resides, is employed, or regularly transacts business in person").

So far, then, the convenience factors come out about even, taking into account the deference accorded to Snow's choice of forum, the inconvenience to Snow and her counsel, the convenience of witnesses located in the New York area, and the geographical limits of this court's subpoena authority.

c.  The other factors related to convenience, including the local interest in the controversy, familiarity of each forum with the applicable law, ease of access to sources of proof, and relative congestion in each forum, are either neutral or of limited importance on the facts presented here.

First, both Hawaiʻi and New York have some local interest in the case.  Snow bought the L'Oréal product in this district and brings Hawaiʻi state law claims.  But New York also has some "interest in deciding controversies involving businesses headquartered there, and that employ a substantial number of its citizens."  *Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 14-cv-00801, 2014 WL 5422576, at *7 (N.D. Cal. Oct. 10, 2014) (cleaned up).  On balance, the court finds that this factor is essentially neutral.

Second, neither court is in a dramatically better position to evaluate the relevant law.  True, Snow now brings claims solely under Hawaiʻi law.  But L'Oréal is correct, at least as a general principle, that to the extent state law departs from the requirements of federal law, the odds increase that state law will be preempted by federal law.  *See* ECF

No. 46, at PageID.713-16.  Although the court has no occasion at this stage to resolve any preemption issues, preemption law generally lends itself to the conclusion that to remain viable, Hawai'i state law cannot depart too greatly from any applicable federal requirements.  And the parties agree that this court and the Southern District of New York are equally capable of interpreting and applying federal law.  Snow objects to this line of reasoning, noting that federal law will not apply to all matters to which Hawai'i state law will apply, and that each preemption issue must be resolved based on the particularities of the state law claims.  Those are fair points, though they are more fairly viewed as qualifications to the general thrust of preemption law, rather than a rejoinder of it.  Even putting aside any consideration of preemption, however, the advantage that this court may have in interpreting Hawai'i state law would weigh only modestly in favor of Snow's position.  That is because, as the MDL Panel observed, the key factual issues related to the allegedly flawed production, advertising, and sale of the products are common across the six actions.  This factor therefore does not greatly weigh against transfer.

Third, L'Oréal points to the fact that most of the relevant evidence in this case would be in New York or New Jersey, and that "costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored."  *Mina*, 2020 WL 4037163, at *3 (citation omitted).  But L'Oréal does not actually detail what evidence would be difficult to transport to this district, and it

20

has not pointed to any specific discovery that could not be exchanged electronically.

Hence the location and access to the majority of the evidence does not seem to weigh

heavily for or against transfer.

And finally, although some courts consider relative court congestion, that factor

does not carry as much weight as the other substantive considerations of judicial

economy and convenience to the parties and witnesses.  Under the circumstances

presented here, relative court congestion weighs only lightly in favor of transfer.

### 3.    The First-to-File Rule

For the foregoing reasons, the court concludes that the interests of justice and the

convenience factors, taken together, weigh in favor of transfer.  But Snow has one

further argument:  that under the "first-to-file" rule, she is entitled to litigate in her

chosen forum because she filed her lawsuit before any of the other related cases.

Indeed, Snow appears to argue that the first-to-file rule requires the court to defer to her

chosen forum even if the interests of justice and the convenience factors weigh in favor

of a transfer.  The court disagrees.

The first-to-file rule applies "when two cases involving substantially similar

issues and parties have been filed in different districts"; it instructs that the district

court in the second-filed case "has discretion to transfer, stay, or dismiss the second case

in the interest of efficiency and judicial economy."  *In re Bozic*, 888 F.3d 1048, 1051-52

(9th Cir. 2018) (cleaned up).  Because Snow filed her action before any of the other cases

now pending in the Southern District of New York, she argues that the first-to-file rule

should guide the court's analysis of the transfer factors, and that the court can only

decline to adhere to this rule if there are equitable reasons to do so. *See* ECF No. 29, at

PageID.506-08.

But the Ninth Circuit has held, in considering the interaction between the

transfer statute and the first-to-file rule, that while "the first-to-file rule guides the

district court's exercise of discretion in handling related cases, the requirements of

§ 1404(a) cabin the exercise of that discretion." *In re Bozic*, 888 F.3d at 1054. And the

first-to-file rule is primarily applicable to the court where latter actions are filed—here,

the Southern District of New York. *See Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,

787 F.3d 1237, 1239 (9th Cir. 2015) ("The first-to-file rule allows a district court to stay

proceedings if a similar case with substantially similar issues and parties was

previously filed in another district court. We review a decision to stay proceedings

under the first-to-file rule for an abuse of discretion."). The idea is that if a motion for a

stay or transfer were filed in the Southern District of New York, the first-to-file rule

would instruct that court to transfer all cases to this district. In that scenario, once all

cases arrive in this first-to-file district, this court would then resolve whether, under

§ 1404(a), the cases should be litigated here or transferred somewhere else. The

Western District of Missouri, for example, recognized as much when it transferred the

*Painter* case to this district, despite the uncertainty over whether there was either

personal jurisdiction or venue here.

In theory, then, the Southern District of New York could transfer its five cases to

this district under the first-to-file rule. This court would then possibly conclude that

there is neither personal jurisdiction nor venue over some of those cases and send them

right back. But the court cannot compel the Southern District of New York to take those

steps, let alone compel the parties litigating there to file a motion that would implicate

the first-to-file rule in the first place. The procedural history of this case has made plain,

moreover, that consolidation in this district is not feasible—witness the fact that the

parties in *Painter* agreed to transfer their case to the Southern District of New York, and

the plaintiffs in *Abednego* and *Noakes* chose that district as their preferred forum.

The only result of rigidly applying the first-to-file rule, then, would be to

produce duplicative litigation in two different federal districts. The court has not found

sufficient justification to produce that result here. The point of the first-to-file rule is to

promote efficiency and "maximize economy, consistency, and comity." *Kohn L. Grp.,*

*Inc.*, 787 F.3d at 1240 (cleaned up). It is not an inflexible command; the court may "relax

the first-to-file rule if the balance of convenience weighs in favor of the later-filed

action." *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270

(C.D. Cal. 1998) (cleaned up). And the interests of justice and the convenience factors

counsel in favor of relaxing the rule here. Relaxing the rule is especially appropriate

when, as here, it will avoid the risk of conflicting rulings and unnecessary duplication of judicial effort. *See Montenegro v. Johnson & Johnson Consumer, Inc.*, No. 24-CV-01895, 2024 WL 4720925, at *4 (C.D. Cal. Sept. 16, 2024) (declining to find that first-to-file rule weighed against transfer of similar BPO product case even though the action was first-filed because the first-to-file rule is "a discretionary, flexible rule" and "[g]iven the risk of conflicting rulings and duplication of effort that would otherwise occur here, transfer furthers the goals underlying the first-to-file rule").

<u>CONCLUSION</u>

For these reasons, L'Oréal's motion to transfer venue to the United States District Court, Southern District of New York, is GRANTED. All pending deadlines are hereby VACATED and to be re-set by the District Court in the Southern District of New York. The Clerk of Court is DIRECTED to TRANSFER the case and all files here to the United States District Court for the Southern District of New York.

IT IS SO ORDERED.

DATED: April 23, 2025, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

_____
Micah W.J. Smith
United States District Judge

---

Civil No. 24-00110 MWJS-KJM; *Jennifer Snow v. L'Oreal USA, Inc.*, et al.; ORDER GRANTING DEFENDANT L'OREAL USA, INC.'S MOTION TO TRANSFER VENUE